UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JOHNACA HARGROVE,** )<br>)<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**COMMISSIONER, SOCIAL** )<br>**SECURITY** )<br>**ADMINISTRATION,** )<br>)<br>**Defendant.** )<br>) | Case No.: 7:23-cv-434-AMM |

## MEMORANDUM OF DECISION

Plaintiff Johnaca Hargrove brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income. *See* 42 U.S.C. § 1383(c)(3). Based on the court's review of the record, the court **REVERSES** the decision of the Commissioner.

**I.   Introduction**

On July 12, 2021, Ms. Hargrove protectively filed an application for supplemental security income under Title XVI of the Act, alleging disability beginning February 9, 2021. R. 17, 66–72. Ms. Hargrove alleges disability due to

anemia, iron deficiency, ulcerative colitis,[1] and weight loss. R. 66. She has at least a high school education and has past relevant work experience as a fast-food worker. R. 26.

The Social Security Administration ("SSA") initially denied Ms. Hargrove's application on September 7, 2021, and again denied it upon reconsideration on December 22, 2021. R. 17, 66–82, 100–01. On January 25, 2022, Ms. Hargrove filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 17, 105. That request was granted. R. 129–31, 153–57. Ms. Hargrove received a telephone hearing before ALJ Sheila E. McDonald on July 14, 2022. R. 33–65. On September 9, 2022, ALJ McDonald issued a decision, finding that Ms. Hargrove was not disabled from July 12, 2021 through the date of her decision. R. 17–27. Ms. Hargrove was thirty-five years old at the time of the ALJ decision. R. 26.

Ms. Hargrove appealed to the Appeals Council, which denied her request for review on February 7, 2023. R. 1–3. After the Appeals Council denied Ms. Hargrove's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On April 4, 2023, Ms. Hargrove sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

---

[1] The undersigned acknowledges the discrepancy between the parties' use of Crohn's disease versus ulcerative colitis to describe Ms. Hargrove's medical condition. The undersigned uses "ulcerative colitis" to refer to Ms. Hargrove's condition. *See* Doc. 13 at 6 n.3; Doc. 14 at 1.

2

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 416.920. *First*, the ALJ must determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 416.972(b). If the ALJ finds that the claimant engages in "substantial gainful activity," then the claimant cannot claim disability. 20 C.F.R. § 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. 20 C.F.R. § 416.920(a)(4)(ii), (c). *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20

C.F.R. §§ 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g)(1), 416.960(c).

The ALJ determined that Ms. Hargrove had not engaged in substantial gainful activity since her application date. R. 19. The ALJ decided that Ms. Hargrove had the following severe impairments: Crohn's disease and major depressive disorder. R. 19. The ALJ found that Ms. Hargrove's pulmonary nodule was "nonsevere" because "[t]here is no evidence of any symptoms related to this finding." R. 19. Overall, the ALJ determined that Ms. Hargrove did not have "an impairment or

combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 19.

The ALJ found that Ms. Hargrove had the "residual functional capacity to perform sedentary work" with certain limitations. R. 21. The ALJ determined that Ms. Hargrove may: frequently climb ramps and stairs, stoop, and kneel; occasionally crawl; and be exposed occasionally to full body vibration. R. 21. The ALJ also determined that Ms. Hargrove must not: climb ladders, ropes, or scaffolds; be exposed to hazards such as unprotected heights and hazardous machinery. R. 21. The ALJ also determined that Ms. Hargrove: can understand, remember, and carry out simple instructions and tasks; can tolerate changes in the workplace that are infrequent and gradually introduced; and can have occasional work-related interaction with supervisors, coworkers, and the general public. R. 21.

According to the ALJ, Ms. Hargrove was "unable to perform any past relevant work" as a fast-food worker. R. 25–26. According to the ALJ, Ms. Hargrove was "a younger individual . . . on the date the application was filed." R. 26. The ALJ determined that she has "at least a high school education." R. 26. The ALJ determined that "[t]ransferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." R. 26. The ALJ enlisted a vocational expert to ascertain "the extent to which the claimant's additional limitations erode the unskilled sedentary occupational base." R. 26. That expert testified that such

individual "would be able to perform . . . representative examples of document preparer . . . , charge account clerk . . . , and touch up screener." R. 26, 62.

Based on these findings, the ALJ concluded that Ms. Hargrove had not been under a disability as defined in the Act, since July 12, 2021. R. 27. Ms. Hargrove now challenges that decision.

**III.  Standard of Review**

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 1383(c)(3); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If

the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## IV. Discussion – Ms. Hargrove's Residual Functional Capacity

Ms. Hargrove alleges that "[t]he ALJ erred in failing to include accommodation for frequent and lengthy restroom breaks" for her "severe ulcerative colitis." Doc. 8 at 12–13. The Commissioner counters that Ms. Hargrove "failed to prove that her Crohn's disease caused additional limitations on her ability to work." Doc. 13 at 8. Instead, the Commissioner argues that "the ALJ properly considered her subjective complaints of disabling symptoms and limitations due to Crohn's disease in assessing her [residual functional capacity]." *Id.* at 6.

Social Security Ruling 96-8p ("SSR 96-8p") regulates the ALJ's assessment of a claimant's residual functional capacity. Under SSR 96-8p, the residual functional capacity "assessment must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at *1, 1996 WL 374184 (July 2, 1996). The ruling specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* at *7. Additionally, in cases where symptoms are alleged, the assessment of a claimant's residual functional capacity must: "Contain a thorough discussion and analysis of the objective medical and other evidence . . . ; Include a resolution of any inconsistencies in the evidence as a whole; and Set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.*

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 416.929; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition

is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 416.929; Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929; *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) consistency between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 416.929; SSR 16-3p at *4, *7–*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead,

the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

This determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here the ALJ limited Ms. Hargrove to sedentary work with certain additional limitations. R. 21. The residual functional capacity crafted by the ALJ did not include a limitation for frequent and lengthy restroom breaks. R. 21. The ALJ stated that "[i]n making this finding, [she] considered all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." R. 21. As an initial matter, the ALJ articulated the correct legal standard for considering Ms. Hargrove's symptoms. R. 21.

Regarding her ulcerative colitis, the ALJ summarized Mr. Hargrove's testimony:

> She stated that all throughout the day and night, she was constantly using the bathroom, waking up three to four times a night to go to the bathroom.
>
> The claimant testified that she had been fired from her last job at Hardee's because her ulcerative colitis had taken a toll on her, and she was not able to work. She said that she was getting Remicade infusions, which sort of helped, but she was continuously tired. . . . She said that she had to go to the bathroom three to seven times a day and had bloody stools twice a day, three to four days a week.

R. 21–22 (citations omitted).

The ALJ found that Ms. Hargrove's "medically determinable impairments could reasonably be expected to cause some work-related limitations; however, [her] statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 22.

Then the ALJ summarized Ms. Hargrove's medical records dating back to her April 2018 diagnosis of ulcerative colitis and treatment by gastroenterologist

11

Charles Elson. R. 22–24. Much of the ALJ's recitation of the medical record related to Ms. Hargrove's need for frequent restroom breaks. The ALJ noted that "on January 4, 2021, the claimant reported that she had four to five bowel movements a day, which were loose with emotional stress, and she saw bleeding in her stool intermittently." R. 22; *see also* R. 435. Also, "[o]n May 12, 2021, the claimant reported that she had five formed bowel movements daily and had seen bleeding in early April. She reported that she had diarrhea two to three days a week . . . ." R. 22; *see also* R. 426.

The ALJ stated that Ms. Hargrove was hospitalized from July 1, 2021 to July 4, 2021 during which time "[s]he reported a four-day history of bloody stools, diarrhea, nausea, vomiting, abdominal pain, and shortness of breath with exertion." R. 22; *see also* R. 322–66. The ALJ noted that Ms. Hargrove "had done well until the week before" her July 19, 2021 follow-up visit at which point "she had two days of severe diarrhea," "six loose bowel movements per day," and "bleeding with daily abdominal pain." R. 23; *see also* R. 418–21.

The ALJ noted that Dr. Elson started Ms. Hargrove on Remicade infusions. R. 23; *see also* R. 421. Ms. Hargrove reported on September 29, 2021 that she "had a good response," with "two to three formed bowel movements per day with no bleeding, abdominal pain, diarrhea, or urgency." R. 23; *see also* R. 460. "On February 23, 2022, the claimant returned to Dr. Elson's office stating that she was

12

having three to four loose bowel movements per day with bleeding twice a week and daily abdominal pain." R. 23; *see also* R. 589–92. The ALJ acknowledged that Ms. Hargrove was again hospitalized on February 24, 2022 for "an acute exacerbation of ulcerative colitis"; Ms. Hargrove was treated with steroids and antibiotics and was discharged on February 27, 2022. R. 23; *see also* R. 620–39.

The ALJ noted that Ms. Hargrove "followed up with Dr. Elson on March 14, 2022, stating that since her discharge from the hospital, she had been having three to four loose stools per day with occasional crampy abdominal pain." R. 23; *see also* R. 581–83. "Dr. Elson increased her Remicade dosage and instructed her to return in eight weeks." R. 23; *see also* R. 583 ("Given symptom burden, we will increase IFX to 10 mg/kg every 8 weeks. Follow up in clinic in 8 weeks to reassess symptom burden."). Before that return appointment, Ms. Hargrove was again admitted to the hospital on April 3, 2022 for "an acute flare of ulcerative colitis and treated with intravenous fluids, antibiotic and steroid medications, and analgesics for pain control." R. 23; *see also* R. 600–19. "She was discharged on April 7, 2022." R. 23 (citation omitted); *see also* R. 600–19.

Ms. Hargrove followed up with Dr. Elson on April 13, 2022 and reported "four to five formed bowel movements daily." R. 23; *see also* R. 579–80 (noting "bleeding"). "Dr. Elson stated that he would schedule her for a colonoscopy to determine i[f] Remicade was still effective." R. 23 (citation omitted); *see also* R.

13

580 ("Plan to schedule a colonoscopy to determine if she is failing Remicade."). Mr. Hargrove returned to Dr. Elson on May 11, 2022 stating that "she had been having three formed bowel movements per day with no bleeding, abdominal pain, diarrhea, or urgency." R. 24; *see also* R. 738–42. Dr. Elson advised that she "taper down" on her prednisone after her next Remicade infusion. R. 24; *see also* R. 739. Dr. Elson said that "it was likely that he would increase the frequency of [Ms. Hargrove's] Remicade infusions to every six weeks" after her upcoming June 21, 2022 colonoscopy. R. 24; *see also* R. 742.

      After reciting this evidence, the ALJ stated:

> The above treatment records show that [Ms. Hargrove] suffered a flare of her ulcerative colitis in July 2021 with subsequent flares in February and April 2022. Despite these flares, [Ms. Hargrove's] weight has remained steady since she started Remicade infusions. In assessing [Ms. Hargrove's] residual functional capacity, I considered her Crohn's symptoms in limiting her to sedentary work that does not require more than frequent stooping, kneeling, or climbing of ramps or stairs.

R. 24.

      There is no limitation in the residual functional capacity to account for the time Ms. Hargrove would require restroom breaks during the workday or the frequency of such breaks. There was no consideration of what impact such breaks would have, if any, on Ms. Hargrove's employment prospects. However, the vocational expert testified that if Ms. Hargrove was "required to take at least 2

14

additional unscheduled breaks during the workday . . . up to 15 minutes each" she "would not be able to maintain any employment." R. 63.

Instead of addressing the impact of Ms. Hargrove's need for restroom breaks, if any, on her employment prospects, the ALJ found that the persistence and limiting effects of Ms. Hargrove's symptoms were not entirely consistent with the evidence of record. R. 22. The ALJ stated that the reasons for this finding are explained in her decision, but the decision is void of such explanation. Instead, the ALJ's decision includes statements that do not support a conclusion that Ms. Hargrove's symptoms are inconsistent with the objective medical evidence. *See* SSP 16-3p.

*First*, the ALJ noted that Ms. Hargrove "was apparently working on a full-time basis" at the time of her January 4, 2021 and May 12, 2021 doctors visits. R. 22. However, the fact of Ms. Hargrove's employment does not negate the necessity of frequent restroom breaks. Instead, Ms. Hargrove testified that she was fired from her job because of her medical condition. R. 41 ("The ulcerative colitis, like it took a toll on me like and they just had to get rid of me, I guess, because of the ulcerative colitis."), R. 58–59. Ms. Hargrove testified:

> [Questioning by attorney:]
> Q     Oh, Ms. Hargrove, the -- at your job that you were working full-time, did they -- would they let you go to the bathroom any time you wanted to?
> A     Yes.
> Q     Okay. And --
> A     Yes and no.

15

> Q      Yes and -- okay. And did you ever have an accident on yourself because of that?
> A      Yes.
> Q      Okay. Did they -- how many -- did you ever work a full week while you were there?
> A      No.
> Q      Okay. And because of that, was that ultimately the reason why you were dismissed?
> A      Yeah.
>
> [Questioning by ALJ:]
>
> Q      So, Ms. Hargrove, you're telling me that they allowed you to go to the bathroom whenever you wanted and that you missed work a lot, right?
> A      Yes.
> Q      But you worked there for almost two years. Why do you think they let you stay on if they had all those accommodations?
> A      They didn't have nobody.
> Q      Okay. And you'd been doing this -- having this -- your regular work schedule this whole time, is that accurate?
> A      Yeah.
> Q      So what, ultimately, led to your termination if they had been okay with it up to that point?
> A      Well, she was like too many callouts, too many doctors' appointments, you know.
> Q      And that was more than what you'd been taking in the past?
> A      Yes.

R. 58–59.

*Second*, the ALJ noted that Ms. Hargrove "had done well until the week before" her July 19, 2021 visit. R. 23. However, only two weeks and one day elapsed between Ms. Hargrove's discharge from the hospital and her follow-up

16

visit; nothing in this short time frame suggests that her symptoms were not as severe as she alleged. In fact, at her July 19, 2021 visit, she weighed only 102 pounds, down from 115 pounds at her May 2021 visit. R. 23.

*Third*, the ALJ reasoned that Ms. Hargrove's weight remained "stable" and increased from 102 pounds. R. 23. However, during these periods of stable weight, Ms. Hargrove's medical records indicate that she was experiencing symptoms. R. 23 (noting that on February 23, 2022, Ms. Hargrove reported "three to four loose bowel movements per day" and ALJ stated her "weight was stable at 114.2 pounds"). Ms. Hargrove's weight is not indicative of her need for restroom breaks as indicated by her February 23, 2022 medical records. Additionally, although Ms. Hargrove's weight "remained steady since she started Remicade infusions" the medical records indicate that her treating doctor was "likely" to "increase the frequency of the . . . Remicade infusions to every six weeks" and questioned whether the Remicade was still "effective." R. 23–24.

*Fourth*, although the ALJ is correct that Ms. Hargrove was hospitalized three times between July 2021 and April 2022 for her ulcerative colitis, this does not indicate that she did not need restroom breaks during other times. *See* R. 24. Instead, the ALJ noted frequent bowel movements as early as January 2021 and through the most recent medical records in May 2022. R. 22–24. And, the ALJ's decision noted that Ms. Hargrove's treating physician had scheduled a colonoscopy and would

17

likely increase the frequency of her Remicade infusions. R. 24. This medical evidence shows that Ms. Hargrove's symptoms were persistent and continued to require treatment. The ALJ did not "articulate explicit and adequate reasons" to discredit Ms. Hargrove's statements. *See Dyer*, 395. F.3d at 1210.

Additionally, the ALJ did not point to any objective medical evidence in the record indicating that Ms. Hargrove did not suffer from symptoms and would not require unscheduled and lengthy restroom breaks during the workday. To the contrary, as the ALJ recognized, Ms. Hargrove's medical records reflect that she consistently reported numerous bowel movements, sometimes loose or bloody, throughout her treatment for ulcerative colitis. R. 22–24. The ALJ did not directly address or follow up on the vocational expert's testimony indicating that a need for unscheduled breaks during the workday would preclude Ms. Hargrove from working. *See* R. 17–27, 63. Consequently, based on the administrative record, it is unclear if Ms. Hargrove's residual functional capacity properly excluded an accommodation for unscheduled restroom breaks and, if so, whether Ms. Hargrove would have been able to take any unscheduled breaks to accommodate her ulcerative colitis symptoms in jobs she could perform. As a result, the ALJ's decision that Ms. Hargrove was not disabled is not supported by substantial evidence.

**V. Conclusion**

The ALJ's determination that Ms. Hargrove is not disabled is not supported by substantial evidence. The Commissioner's final decision is therefore reversed and remanded to the Commissioner to conduct further proceedings consistent with this opinion. A separate order will be entered.

**DONE** and **ORDERED** this 30th day of April, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE